## J. M. SMITH v. MORGANTON ICE COMPANY ET ALS.

### (Filed 15 May, 1912.)

**1. Antitrust Laws—Interpretation of Statutes.**

The antitrust law of 1907, ch. 218 (Revisal, sec. 3028), since its amendment by chapter 167, Laws of 1911, restricts unlawful conduct "tending to interfere with the trade of an opponent or business rival with the purpose of attempting to fix the price of anything of value when the competition is removed" to the single instance when it is done "by circulating false reports."

**2. Same—Commencement of Action.**

By express terms of the statute, the repeal of chapter 218, Laws of 1907 (Revisal, sec. 3028b), does not affect an action theretofore commenced. Revisal, sec. 2830.

**3. Same—Common Law.**

By express provision, chapter 218, Laws of 1907 (Revisal, sec. 3028b), shall "not be construed so as to repeal or restrict the common-law doctrine preventing unlawful combinations in trade and commerce," and this provision is still effective, being reënacted by chapter 167, sec. 9, Laws of 1911.

**4. Same—Punitive Damages—Instructions.**

The plaintiff was a dealer in meats in M., and desirous of dealing in ice, also, made a contract with an ice plant at N., a nearby town, whereby he could sell ice in M. for a profit at 35 cents per hundred pounds. The defendant procured an agreement with the only ice plant in the town of M. by which it would not sell ice there, and by threats of competition at N. deterred the Ice Manufacturing Company there from shipping ice to the plaintiff, and at least temporarily broke up his meat and ice business, whereupon the defendant put the minimum price of ice at M. at 50 cents per hundred pounds: *Held*, (1) the conduct of the defendant was violative of the common-law doctrine against monopolies; (2) conceding that the defendant did not know of plaintiff's contract, its' unlawful conduct was the preventing plaintiff from obtaining the ice; (3) exemplary or punitive damages are recoverable in an amount to be allowed in the discretion of the jury, if the jury find that defendant's acts were maliciously done; (4) the defendant's acts if done without right or justifiable cause would constitute malice; (5) an instruction was not error when considered in connection with the charge as a whole, that the jury could "award ex-

emplary damages for any injury they may find that the plaintiff suffered by the interference in his business by the defendant's attempt to fix the price of ice at M." for the illegal purposes, etc.

APPEAL by defendant from *Long, J.,* at December Term, 1911, of BURKE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*John T. Perkins for plaintiff.*
*M. Silver and Avery & Ervin for defendants.*

CLARK, C. J. Though this State enacted an antitrust law in 1891, this case is the first that has reached this Court in which it has been attempted to enforce such legislation by civil action, and none has so far come up on the criminal side of the docket.

The defendant ice company owned an ice plant in Morganton. The plaintiff had a fresh-meat market which required ice, and he desired to deal in ice. The defendants procured an agreement with the Deaf and Dumb School in Morganton, the only other ice plant in that town, not to sell ice to any one. They then went to the neighboring towns that had ice plants and procured agreements from them not to ship ice to Morganton to plaintiff unless he would agree to sell at a minimum price in Morganton of 50 cents per 100 pounds. The plaintiff already had a contract with the ice company in Newton to ship him all the ice he wished at 17½ cents per 100, which he was selling at 35 cents per 100 pounds, at a profit. The defendants by threats that they would ship ice to Newton and put wagons on the streets there to dispose of their ice and cause the Newton company to lose money, deterred the Newton company from shipping plaintiff any more ice, and for a time at least broke up both the plaintiff's ice business as well as his meat market, whereby the defendants obtained a monopoly and control of the ice business in Morganton and sold ice at the minimum price to the public of 50 cents per 100 pounds.

Laws 1907, ch. 218, now Pell's Revisal, 3028a, subsec. (b), made it unlawful for "any person, firm, corporation, or association to directly or indirectly destroy or willfully injure, or undertake to destroy or injure the business of any opponent or

business rival in the State of North Carolina with the purpose or intention of attempting to fix the price of anything of value when the competition is removed."

This action was begun when the above section was in force, but chapter 167, Laws 1911, subsection (b), amended the above section by interpolating the words "by *circulating false reports*" tending to damage the credit of said opponent or rival. The effect of the amendment made in subsection (b) by the act of 1911 is to narrow and restrict the forbidden conduct "tending to interfere with the trade of an opponent or business rival with the purpose of attempting to fix the price of anything of value when the competition is removed" to the single instance when it is done "by circulating false reports." Under the act of 1907 all conduct of any nature done with such purpose or intention was made unlawful. Under the act of 1911 no conduct with that purpose or intention is unlawful save only that of "circulating false reports."

The other subsections in the act of 1911 apply only when the methods forbidden are: *(a)* Sales on condition that purchasers shall not deal with competitors. *(c)* Destruction or injury by reason of lowering price. *(d)* Lowering or raising price with purpose of increasing profit when rival is destroyed. *(e)* Differentiating prices with intent to injure business of another. *(f)* Agreements not to buy or sell in certain territory with intention of preventing competition. *(g)* Conspiracy to keep down or put up prices. *(h)* Solicitation of trade, patronage, or good-will by means of false statements. The conduct alleged against the defendants in this case is therefore not prohibited by the antitrust act of 1911.

Section 11 of the act of 1911 specifically repealed the above act of 1907. This action was begun in 1909. Whatever the purpose in thus restricting the provisions of subsection (b) and in repealing the act of 1907, this action begun before its repeal is saved from its operation by Revisal, 2830, which provides: "The repeal of a statute shall not affect any action brought before the repeal for any forfeitures incurred or the recovery of any rights accruing under such statute." The act of 1907 contained the provision, now Pell's Revisal, 3028b, that it shall

"not be construed so as to repeal or restrict the common-law doctrine preventing unlawful combinations in trade and commerce, which is hereby reënacted and declared to be in full force in this State," except as inconsistent with that statute. This last provision is reënacted in the act of 1911, ch. 167, sec. 9.

Therefore this action is governed by the act of 1907, ch. 167, sec. 9; Pell's Revisal, 3028a, subsec. (b), or by the common law existing prior to the adoption of any statute on the subject. Under these the charge of the court and the verdict of the jury should be sustained.

The defendants' first exception is to evidence of the contract which the plaintiff had made with the Newton Ice Company, and the second is to the refusal of the issues tendered by the defendant. The third exception is to the refusal of a nonsuit. These exceptions are without merit, require no discussion, and indeed do not seem to be insisted upon by the defendants in their brief.

The fourth and fifth exceptions are because the court refused to charge that there was no evidence that the defendants at any time knew of the existence of a' contract between the plaintiff and the Newton Ice Company by which the latter was to furnish the ice to the former. The witness, Wagoner, of the Newton Ice Company, testified that they could manufacture and sell ice to the plaintiff in any quantities he wished at 17½ cents, and would have done so but for the interference of the defendant, and in fact that they' had a contract with the plaintiff to furnish him what ice he needed and ordered and as often as he should order it during the season. The plaintiff's evidence was to the same effect. There was ample evidence to justify the jury to find that the defendants were aware of the contract. Besides, it is not material whether the defendants by threats induced the Newton Ice Company to break a contract to ship ice to the plaintiff or merely prevented them from shipping, if they otherwise would have done so.

Exception six is because the court refused to charge that the plaintiff could recover only actual damages. Exception seven is to the following charge: "It is made unlawful in this State for any person or persons to attempt to injure and break up

the business of another for the purpose of fixing a rate at which any article of commerce shall be sold; and the court charges you that if you find from the greater weight of the evidence that the defendants attempted to break up the business of the plaintiff and did break up his business, as alleged, and did injure him therein in the selling of ice in Morganton, for the purpose of fixing a minimum price at which ice should be sold when his competition was removed, and that, pursuant to this intention, the defendants tried to induce nearby manufacturers of ice not to sell to the plaintiff, and prevented the Newton Ice Company from fulfilling their contract and fixed the price at which ice should be sold at a minimum at retail in Morganton as 50 cents per hundred, when the plaintiff had arranged and was then and there able to sell ice at a less price, you may award exemplary damages for any injury you may find that the plaintiff suffered by the interference in his business in the attempt to fix the price of ice in Morganton and effectuating the illegal purposes aforesaid."

The eighth exception is because the court charged the jury: "If you find that such contract as the plaintiff claims did exist, then if the defendants knowingly and intentionally procured it to be violated, they may be held liable for the wrong, although it may have been done for the purpose of promoting their own business, but in order to justify the finding of punitive damages against the defendant, the act done must have been done with the unlawful purpose to cause such damage or loss without right or justifiable cause on the part of the defendant, which constitutes damage."

The ninth exception is because the court told the jury that under the decision in *Haskins v. Royster,* 70 N. C., 605, the Court had defined the word "malice" as follows: "The act done must have been done without right or justifiable cause on the part of the defendant, which constitutes malice."

The tenth and last exception is because the court charged that it was held in *Hayes v. R. R.,* 141 N. C., 199, *Brown, J.:* "This Court has said, in many cases, that punitive damages may be allowed or not, as the jury see proper; but they have no right to allow them unless they draw from the evidence the

conclusion that the wrongful act was accomplished by fraud or malice, or recklessness or other unlawful and wanton aggravation on the part of the defendant. In such cases the matter is within the sound discretion of the jury, not only as to the allowance of damages, which is sometimes called smart money or punitive damages—not only as to the allowance, but as to the amount that is allowed."

Upon examination of the foregoing instructions they are found to be a correct exposition of the law on the subject.

The defendants insist that there was error in allowing the jury to consider the question of exemplary or punitive damages, and particularly urge that there was error in instructing the jury that they could "award exemplary damages for any injury you may find that the plaintiff suffered by the interference in his business in the attempt to fix the price of ice in Morganton and effectuating the illegal purposes aforesaid." But construed in connection with the context and with the whole charge, this exception is hypercritical. The conduct with which the defendants were charged and of which the jury, in response to the first three issues, find that they were guilty made them liable not only for the actual damages sustained, but also for punitive damages, if the jury found, as they must have done, that such conduct was willful and malicious as the latter word was construed in the charge and in the decisions of this Court which were quoted to them, to wit, that the act was done with the unlawful purpose, without right or justifiable cause on the part of the defendants, of interfering with the business of the plaintiff. If there was error, it was against the plaintiff, as the charge should have been that the jury could allow "exemplary damages *in addition to* the actual damages sustained" by the wrongful act of the defendants.

There is no error, and the defendants are not entitled to a new trial. It is, however, singular, that with numerous and glaring instances of the violation of law and right, in the manner herein shown by other parties and to a far vaster extent in the twenty-one years since this statute was passed, and indeed in violation of the common law, which punishes such offenses, that this case, in which a small infraction of the law

is involved, is the only one that has come to this Court. The enforcement of the law and the protection of the plaintiff and the public in this instance is noteworthy when with a statute so widely known and discussed and when the evil has been so great and manifest, there has been no attempt to enforce the law in other cases.

No error.